

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES C. SCHUG, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of Social Security, )<br>)<br>Defendant. ) | Case No. 07 C 3686<br><br>Magistrate Judge<br>Martin C. Ashman |

## MEMORANDUM OPINION AND ORDER

Plaintiff, James C. Schug ("Schug"), seeks judicial review of the final decision of the Defendant, Michael J. Astrue, Commissioner of Social Security ("SSA"), denying his claim for Disability Insurance Benefits ("DIB"). Before this Court are Plaintiff's Motion for Summary Judgment or Remand and Defendant's Response Brief in Support of Affirming the Decision of the Commissioner. Both parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(c). For the reasons that follow, the Court grants Plaintiff's motion in part and denies it in part, and remands the case to the Commissioner for further proceedings consistent with this opinion.

# I. Background

## A. Procedural History

Schug applied for Social Security DIB on June 6, 2005. The SSA denied his claim initially on August 29, 2005, and on reconsideration on February 8, 2006. (R. at 17.) On March 17, 2006, Schug filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) The ALJ, John E. Meyer, held a hearing on December 11, 2006, and issued an unfavorable decision finding Schug not disabled through December 31, 2006, the date he was last insured. (R. at 23.) On May 1, 2007, the Appeals Council of the SSA denied Schug's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 3.) Schug now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## B. Relevant Facts

Schug was 54 years and 9 months old on the date of the hearing for his DIB claim. (R. at 17, 22.) He has a high school education. (R. at 22.) In 2000, he retired from a maintenance supervisor position at a Commonwealth Edison generating station, and since then has been working as a landscaping supervisor. (R. at 74.) He claims that he became unable to work on May 1, 2004, due to pain in his lower back and leg, but he does not remember any "clear, precipitating event" that led to his alleged disability. (R. at 80, 155.)

### 1. Medical Evidence

In February 2004, Schug saw Dr. Adam Milik complaining of mild lower-back pain, for which Dr. Milik prescribed the non-steroidal anti-inflammatory drug (NSAID) Vioxx and

the muscle relaxant Flexeril. (R. at 143; Def.'s Br. at 2.) One year later, in March 2005, Schug returned to Dr. Milik with a mild, dull pain in his lower back that had lasted for two months. (R. at 142.) Schug was taking no medication at this time. (*Id.*) On examination, Dr. Milik noted paraspinal muscle spasms. (*Id.*) Following an MRI in May 2005, Dr. Milik diagnosed Schug with mild degenerative joint disease in the lumbar spine with disc bulging at L2-3 and L5-S1. (R. at 140.)

Schug filed his DIB claim in June 2005, and saw Dr. Milik on August 2, 2005. At this visit, Schug reported that his lower-back pain was minimal, and that he felt no pain when Dr. Milik lifted his leg while keeping his knee straight. (R. at 138.) Dr. Milik told Schug to take the NSAID Daypro and continue his exercise program. (*Id.*; Def.'s Br. at 2.)

On August 26, 2005, the state agency physician, Dr. Frank B. Norbury, reviewed Schug's medical records and opined that Schug, with his exertional limitations, had the ability to: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and perform unlimited pushing and pulling, subject to the restrictions on lifting and carrying. (R. at 119.) He also opined that Schug's postural limitations allowed for occasional climbing, kneeling, crouching, stooping, and crawling, and that Schug had no manipulative, visual, communicative, or environmental limitations. (R. at 120-22.)

On November 7, 2005, Schug told Dr. Milik that he had lower-back pain that was radiating to his left leg, that it became worse with activity, and that it interfered with his work. (R. at 130.) On examination, Dr. Milik noted paraspinal muscle spasms and tenderness. (*Id.*)

He told Schug to follow up for a steroid injection and to stop taking Daypro. (*Id.*) Dr. Milik also referred Schug to Accelerated Rehabilitation, a rehabilitation center. (R. at 169.)

From November 21, 2005, through November 6, 2006, Schug attended over forty physical therapy sessions at Accelerated Rehabilitation. At his initial evaluation on November 21, 2005, Schug saw Rae Salus, a physical therapist, complaining of pain in the mornings, inability to walk for prolonged periods of time, and lower-back pain. (R. at 169.) Schug demonstrated full forward flexion and left-side bending, but right-side bending was at only fifty percent. (*Id.*) Ms. Salus found that Schug had degenerative disease in the lumbosacral area with disc bulging. (*Id.*)

Schug returned to the rehabilitation center on December 15, 2005, and reported that he had been doing better and that physical therapy was helpful. (R. at 168.) At this visit, Schug showed improved right-side bending and minimally limited extension. (*Id.*) In February 2006, Schug told Ms. Salus that he continued to improve with the weekly therapy. (R. at 167.) His main complaint at the time was lower-back pain with left-leg numbness and tingling after standing for more than ninety minutes. (*Id.*) He reported two episodes of numbness and tingling in his left leg when he was standing at an auction for about four hours. (*Id.*) In March 2006, Ms. Salus noted that while Schug continued to improve, he reported bouts of lower-back pain and left-leg numbness and tingling after prolonged standing or working on his farm. (R. at 165-66.)

On May 8, 2006, Jared Matejewski, a physical therapist at Accelerated Rehabilitation, completed a Residual Functional Capacity ("RFC") report detailing multiple limitations of physical activities. (R. at 147-49.) Mr. Matejewski stated that Schug would miss four days of

work per month due to his impairments. (Pl.'s Mem. at 3; Def.'s Br. at 7.) He also opined that Schug could walk one city block without rest or severe pain, sit for twenty minutes at a time and a total of four hours in an eight-hour workday, stand for thirty minutes at a time and a total of four hours in a workday, and lift and carry twenty pounds occasionally and ten pounds frequently. (R. at 148-49.) Schug did not require a cane or other ambulatory aids. (R. at 149.) According to Mr. Matejewski, he would need to walk for ten minutes every thirty minutes during the workday, shift positions at will, and take unscheduled fifteen-minute breaks every fifteen to thirty minutes. (*Id.*) Mr. Matejewski also opined that Schug was capable of low-stress jobs and that emotional factors did not contribute to the severity of his symptoms and functional limitations. (R. at 148.) One week later, on May 15, 2006, Mr. Matejewski reported that Schug complained of persistent tightness and discomfort on the left side of his lower back, especially after more intense daily activities. (R. at 164.) However, Mr. Matejewski noted that Schug's symptoms "respond[ed] well" to soft tissue mobilization and stretching exercises, which Schug had been performing three times a week. (*Id.*)

On June 5, 2006, Schug saw Dr. Juan Santiago-Palma and reported that the physical therapy was ineffective in relieving his pain. (R. at 155.) Nonetheless, Schug did not want interventional pain procedures, and Dr. Santiago-Palma told him to continue the physical therapy and start taking the medicines Mobic and Tizanidine instead of Daypro and Flexeril. (*Id.*) At a subsequent physical therapy session at Accelerated Rehabilitation, the physical therapist Mary Ann Nedorost reported that Schug continued to complain of a high level of pain and that he "appear[ed] to have plateaued" in therapy. (R. at 162.)

On August 7, 2006, Mr. Matejewski reported that Schug admitted feeling better with each therapy session. (R. at 161.) Schug walked independently with no ambulatory aids and showed no limp, although daily activities often caused him discomfort. (*Id.*) On September 25, 2006, Mr. Matejewski concluded that Schug "respond[ed] well" to physical therapy, and that the therapy had restored Schug's lower-back flexibility and improved his muscle strength. (R. at 160; Def.'s Br. at 6.)

On October 16, 2006, Schug returned to Dr. Santiago-Palma and showed full muscle strength in both legs, but complained of persistent pain in his left lower back and left leg. (R. at 153.) Because the MRI from May 2005 did not fully explain this persistent pain, Dr. Santiago-Palma ordered a new lumbar MRI. (*Id.*) The new MRI confirmed degenerative changes, most notably a narrowing of the left neural foramen at L5-S1 and L4-L5 bilaterally, but showed no definite disc herniations. (R. at 156.) On November 28, 2006, Schug was prescribed Flexeril and the NSAID Relafen. (R. at 152.)

### 2. Hearing Testimony

At the hearing on December 11, 2006, Schug testified that he had experienced a progressively debilitating pain for the past two years. (R. at 209.) He testified that most of his pain was on the left side of his lower back and that his pain went down his left leg to the toes. (*Id.*) He awoke with pain at night if he did not take his medication, and he had pain if he sat for too long. (*Id.*) His son did all the work at home for him and usually drove when they went on a long trip so that Schug could move around in the back seat. (R. at 212.) Schug's doctor

was planning to start epidural injections, after which he would see an orthopedic surgeon. (R. at 209-10.)

The Medical Expert ("ME") Dr. William H. Newman reviewed the medical evidence and testified that Schug had a "multiple level disc degeneration and some disc bulging at L4 and L5 with some narrowing in the left parameter at L5 . . . and no neurological deficit." (R. at 215.) He opined that Schug had the RFC for the full range of light work with occasional bending. (*Id.*) Mr. Matejewski, the physical therapist, had opined that Schug could stand for no more than four hours in a workday, that he needed to shift positions at will and take unscheduled fifteen-minute breaks every fifteen to thirty minutes, and that he would miss four days of work per month. (R. at 21, 148-49.) However, Dr. Newman stated that the record did not support Mr. Matejewski's opinion regarding Schug's physical abilities. (R. at 216-18.) Dr. Newman explained that, even if there had been MRI evidence of an annular tear when the disc bulging occurred, the pain would not have lasted more than twelve months. (R. at 218.) He also testified that disc degeneration and bulging would not preclude light work and that light work with subsequent rest would not aggravate Schug's condition. (R. at 219-20.)

The Vocational Expert ("VE") Pamela Tucker reviewed Schug's work experience as a maintenance supervisor and a landscaping supervisor. Both were skilled jobs at the medium exertional level as generally performed in the economy and at the heavy exertional level as Schug performed them. (R. at 224.) The ALJ then asked the VE to assume a hypothetical person of Schug's age with a high school education and Schug's work experience who had the RFC for the full range of light work, except that he could do only occasional bending. (R. at 225.) The VE found that this hypothetical person could perform the following occupations

existing in the region: retail clerk (approximately 21,000 jobs); counter clerk (approximately 2,300 jobs); and delivery driver (approximately 3,600 jobs). (R. at 226.) The VE also stated, however, that if the hypothetical person missed work two to four times per month, those jobs would be eliminated. (R. at 227.)

3. The ALJ's Findings

In a decision dated January 23, 2007, the ALJ made the following findings:

1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2.   The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. §§ 404.1520 (b) and 404.1571 et seq.).

3.   Through the date last insured, the claimant had the following severe combination of impairments: bulging disc at L4-5, left foraminal narrowing at L5, and disc degeneration at all levels (20 C.F.R. § 404.1520(c)).

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including 1.02 and 1.04 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5.   [...] Through the date last insured, the claimant had the residual functional capacity for light work with occasional stooping.

6.   Through the date last insured, the claimant was unable to perform past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on March 11, 1952 and was 54 years old on the date last insured, which is defined as closely approaching advanced age (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 C.F.R. § 404.1568).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1560(c) and 404.1566).

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 2006, the date last insured (20 C.F.R. § 404.1520(g)).

(R. at 19-23.)

## II. Discussion

### A. Standard of Review

This Court will uphold the ALJ's decision "if it is supported by substantial evidence and is free of legal error." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citing 42 U.S.C. § 405(g)). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001); *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). However,

where the ALJ commits an error of law, "reversal is required without regard to the volume of the evidence in support of the factual findings." *Imani ex rel. Hayes v. Heckler*, 797 F.2d 508, 510 (7th Cir. 1986).

In reviewing the ALJ's decision under the substantial evidence standard, this Court will not reweigh the evidence or substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, this Court will not simply "rubber-stamp" the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The ALJ must articulate his analysis of the case at some minimal level in order to allow for meaningful appellate review. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must consider all relevant evidence, and may not selectively discuss only evidence that favors his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Where "conflicting evidence allows reasonable minds to differ," the responsibility for resolving the conflict falls on the ALJ, not the Court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) ("The ALJ has the authority to assess medical evidence and give more weight to evidence he finds more credible."). Where there is a conflict between medical opinions, the ALJ may choose between those opinions but may not substitute his own lay opinion for those of the medical professionals. *Davis v. Chater*, 952 F. Supp. 561, 566 (N.D. Ill. 1996).

### B. The Five-Step Sequential Evaluation Process

The SSA employs a five-step sequential evaluation process in determining whether a claimant is disabled. 20 C.F.R. § 416.920; *see also Schumacher v. Barnhart*, 196 F. Supp. 2d

716, 720 (N.D. Ill. 2002). If the ALJ determines that the claimant is or is not disabled at a given step of the evaluation process, the evaluation need not go on to the next step. At the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" means work that: (a) involves doing significant physical or mental activities; and (b) is done (or intended to be done) for pay or profit. 20 C.F.R. § 404.1572. Second, the ALJ determines whether the claimant has a severe impairment or combination of impairments; if not, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether the claimant's impairment meets or equals any impairment listed in the social security regulations as being so severe as to preclude any gainful activity; if so, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Fourth, the ALJ determines whether the claimant retains the Residual Functional Capacity ("RFC"), despite his impairment, to perform his past relevant work; if so, the claimant is determined not to be disabled. 20 C.F.R. § 404.1520(e). The RFC is defined as that which an applicant can still do despite the physical and mental limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). The RFC is used to classify the claimant's work capability in categories such as sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567.

At the fifth and last step, the ALJ uses the claimant's RFC to determine whether the claimant can perform other work in the national economy, considering his RFC together with his age, education, and work experience. If so, the claimant is not disabled. If the claimant is not capable of performing other work, he is disabled. 20 C.F.R. § 404.1520(g). The claimant bears the burden of proof at steps one through four; at step five, the burden shifts to the

Commissioner to show that the claimant is capable of working. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

At step one, the ALJ found that Schug had not engaged in substantial gainful activity since the alleged onset date of his disability. (R. at 19.) At step two, the ALJ found that Schug suffered from severe impairments. (Id.) At step three, the ALJ found that Schug's impairments did not meet or equal a listed impairment. (R. at 19-20.) At step four, the ALJ found that Schug could have performed light work with occasional stooping prior to December 31, 2006. (R. at 20-21.) At step five, the ALJ found that, prior to December 31, 2006, there were jobs that existed in significant numbers in the national economy that Schug could have performed. (R. at 22-23.) The ALJ concluded that Schug was not under a "disability," as defined in the Social Security Act, at any time through December 31, 2006, the date he was last insured. (R. at 23.)

### C. Analysis

Schug alleges that the ALJ made three errors, entitling him to remand of the ALJ's decision. First, Schug argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ failed to provide a function-by-function analysis of all of the components of light work. Secondly, Schug argues that the ALJ erred by giving less weight to Schug's treating physical therapist's report than to the ME's opinion. Finally, Schug argues that the ALJ erred by not considering him to be of "advanced age," i.e., age 55 or older, because he fell within a borderline situation by virtue of being three months short of the advanced age category at the time of his hearing. The Court addresses these arguments in turn.

1. <u>Residual Functional Capacity</u>

Schug alleges that the ALJ erred by not providing a sufficient function-by-function analysis of his RFC in accordance with Social Security Ruling ("SSR") 96-8p and 20 C.F.R. § 404.1545. Under the Social Security Act, the findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). An ALJ's RFC assessment must be based on all of the relevant evidence in the record, including, among other things, the claimant's medical history, medical symptoms and findings, and medical source statements. SSR 96-8p. An ALJ must articulate his analysis of the evidence at some minimum level to allow the Court to "trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). However, SSR 96-8p does not mandate a function-by-function articulation of the claimant's RFC. The plain language of SSR 96-8p requires the adjudicator to "consider, not articulate," the claimant's RFC on a function-by-function basis. *Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1043 (N.D. Ill. 2007) (quoting *Corder v. Barnhart*, No. 03 C 9308, 2004 WL 1381125, at *6 (N.D. Ill. May 10, 2004)).

In his decision, the ALJ concluded that Schug was not disabled based on the medical and non-medical evidence in the record. The path of the ALJ's reasoning is ascertainable by reading his RFC finding in concert with his statements about the state agency physician and ME opinions. Function by function, the state agency physician stated Schug's exertional and postural limitations at the time Schug filed his DIB claim. (R. at 119-20.) At the hearing about eighteen months later, the ME gave a less restrictive RFC report, noting decreased postural limitations based on the medical evidence in the record. (R. at 21, 215.) Acknowledging the inconsistency between the opinions of the state agency physician and the

ME on the subject of postural limitations, the ALJ stated that he found the ME's opinion persuasive, and concluded that Schug could perform light work with occasional stooping. While the ALJ did not articulate his reason for finding the opinion of the ME more persuasive than that of the state agency physician on the topic of certain postural limitations, this hardly means that the ALJ failed to consider Schug's RFC on a function-by-function basis. On the contrary, the Court finds that the ALJ's detailed statement of the medical evidence shows that the ALJ properly considered and compared the opinions of the state agency physician and the ME and incorporated their function-by-function analysis of Schug's RFC into his decision. (R. at 20-21.) The ALJ himself did not articulate Schug's RFC function by function, but he was not required to do so.

Schug relies on *Qualkenbush v. Barnhart*, No. 01 C 8648, 2003 WL 22880838, at *7-8 (N.D. Ill. Dec. 5, 2003), but *Qualkenbush* is distinguishable from this case. In *Qualkenbush*, the ALJ stated that the claimant's impairments precluded, among other activities, extensive stooping, but that "these are not features . . . of light work." *Id.* at *8. In fact, light work is defined as requiring occasional stooping for up to one-third of the workday. *Id.* The *Qualkenbush* court found that the ALJ failed to explain how to resolve this inconsistency in the RFC assessment. *Id.* This explanation could have been made by a function-by-function assessment or by an analysis of how the evidence supported the ALJ's conclusion. However, in the instant case, the ALJ did not leave similar inconsistencies unresolved. The inconsistency was in the opinions of the medical professionals, not in the ALJ's RFC assessment. The ALJ chose to give greater weight to one of the medical opinions after discussing all relevant evidence in detail. He clearly showed that he had considered the RFC

on a function-by-function basis, as it was articulated by the medical professionals. Therefore, the Court finds that the ALJ's finding on Schug's RFC is supported by substantial evidence.

2. <u>Treating Physical Therapist's Report</u>

Schug next alleges that the ALJ erred by not giving sufficient weight to his "treating sources" pursuant to 20 C.F.R. § 404.1513 and SSR 06-03p. A "treating source" must be a "physician, psychologist, or other acceptable medical source." 20 C.F.R. § 404.1502. While 20 C.F.R. § 404.1513(a) does not include a physical therapist not licensed as a physician as an acceptable source of medical testimony, 20 C.F.R. § 404.1513(d) permits the ALJ to consider information from other sources, including physical therapists. The ALJ may give less weight to information from such sources than he gives to licensed physicians, and he is "not required to apply the stringent treating source rule in evaluating such opinions." *Koschnitzke v. Barnhart*, 293 F. Supp. 2d 943, 950 (E.D. Wis. 2003). Nevertheless, such opinions should not be ignored, and the ALJ is always required to explain how the evidence leads to his conclusions and how he resolved evidentiary conflicts. *Id.*

In the instant case, the ALJ did not simply ignore Schug's physical therapist. The ALJ reasonably gave less weight to the physical therapist's report because it was inconsistent with the opinion of the ME, which was supported by medical evidence. Schug's physical therapist opined that Schug could stand for no more than four hours in a workday, that he needed to shift positions at will and take unscheduled fifteen-minute breaks every fifteen to thirty minutes, and that he would miss four days of work per month. (R. at 21, 148-49.) However, the ME

reviewed the medical evidence and stated that the record did not support the physical therapist's opinion. (R. at 216-18.) The ME found no evidence of an annular tear when the disc bulging occurred, but even if there was such evidence, the ME opined, the pain would not have lasted more than twelve months. (R. at 218.) According to the ME, disc degeneration and bulging would not preclude light work, and light work with occasional bending would not aggravate Schug's condition. (R. at 219-20.) The ALJ was well within his discretion to evaluate these medical opinions, determine the weight to give each opinion, and resolve the evidentiary conflict.

Schug further challenges the weight given to the ME's findings on the grounds that the ME is a consulting physician who has never treated him. However, there are times when the opinion of a consulting physician may hold more weight than a treating physician's opinion, because the treating physician may want to do a favor for a client and may too quickly find a disability. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985). Additionally, the treating physician may not know how the patient's medical situation compares to others, and therefore "a consulting physician's opinion might have the advantages of both impartiality and expertise." *Dixon*, 270 F.3d at 1177. Even if Schug had a treating physician, the ALJ could have chosen the opinion of a consulting physician over that of the treating physician if he found the former to be more credible. Here, the consulting physician's opinion is corroborated by the medical record. In light of the fact that Schug did not have a treating physician, but only a physical therapist, and the fact that the medical evidence supported the findings of the ME, the ALJ properly relied on the ME's opinion.

### 3. Borderline Age Determination

Schug alleges that the ALJ erred by not considering him to be of "advanced age," *i.e.*, age 55 or older, because he fell within a borderline situation by virtue of being three months short of the next age category. Along with the claimant's physical ability, education, and work experience, age is an important factor in the medical-vocational guidelines for determining the claimant's ability to adjust to other jobs that exist in the national economy. 20 C.F.R. § 404, Subpt. P, App. 2. If such jobs exist in significant numbers, the claimant is determined to be not disabled. *Id.* A borderline situation exists when a claimant would be determined to be disabled using an older age category and the claimant is within a few days or a few months of reaching the older age category. 20 C.F.R. § 404.1563(b); *Young v. Barnhart*, 287 F. Supp. 2d 905, 912-13 (N.D. Ill. 2003). The regulations do not provide fixed guidelines as to when a borderline situation exists, since such guidelines would themselves reflect a mechanical approach. SSR 83-10. In a borderline situation, the SSA will consider whether to use the older age category after evaluating the overall impact of all the factors of the claimant's case. *Young*, 287 F. Supp. 2d at 912-13; 20 C.F.R. § 416.963. While the use of the higher age category is not automatic in a borderline situation, the ALJ must address whether it is more appropriate to use the higher age or the claimant's actual age. *Young*, 287 F. Supp. 2d at 913.

It is undisputed that Schug was three months short of his fifty-fifth birthday on the date of his hearing, when the ALJ found him to be capable of light work. Rule 202.14 of the medical-vocational guidelines indicates that a claimant must be considered not disabled when he is "closely approaching advanced age," *i.e.*, 50 to 54 years old, has at least a high school education and non-transferable skills, and is limited to light work. 20 C.F.R. § 404, Subpt. P,

App. 2. Under Rule 202.06, a finding of "disabled" is warranted for a claimant with the same education, work experience, and RFC when he is of "advanced age," *i.e.*, 55 years or older.[1] 20 C.F.R. § 404, Subpt. P, App. 2. Therefore, the borderline issue could affect the outcome of the case. However, the record is devoid of any discussion of Schug's borderline age. The ALJ erred by not addressing whether Schug was of borderline age before choosing which rule to apply from the medical-vocational guidelines. While the Court does not instruct the ALJ to select a particular age category, the Court remands this case to the ALJ for a borderline-age analysis as required by 20 C.F.R. § 404.1563(b).

### III. Conclusion

For the reasons stated above, the case is remanded to the ALJ for proceedings consistent with this opinion.

**ENTER ORDER:**

*[signature]*

MARTIN C. ASHMAN
United States Magistrate Judge

Dated: July 22, 2008.

---

[1] Schug cites Rule 202.04. (Pl.'s Mem. at 6.) If the ALJ had considered Schug to be of "advanced age," however, the applicable Grid Rule would have been Rule 202.06, because Schug's work background was skilled. (R. at 224.) Either rule directs a finding of "disabled."